## CHARLES E. HULL, ET AL.
### vs.
## CLAYTON J. NEWTON

Superior Court     New Haven County     File #49977

Present:  Hon. ARTHUR F. ELLS, Judge.

George C. Conway,          Attorney for the Plaintiffs.

Beers & Beers,          Attorneys for the Defendant.

### MEMORANDUM FILED MAY 12, 1936.

ELLS, J. The defendant developed a tract of land in Guilford near the creek known as Guilford Sluice at the easterly end of Whitfield Street, divided it into one hundred and ten lots, issued and published a surveyor's map of the tract and sold many of the lots at private and auction sale. The deed of each lot sold contained a poorly worded restriction, "No dwelling house shall be placed thereon to cost less than $2000. or within twenty-five feet of highway. No outside toilet shall be erected on said premises and any garage or other building erected thereon must be at least seventy feet from highway." There is no statement that any or all of the lots are or will be so restricted. Handbills had stated "Suitable restrictions have been imposed to suit all purchasers" and newspaper advertisements had said, "the property is suitably restricted to suit all purchasers".

The entire development is upland, and borders on the east and north on salt meadow which in turn borders on the creek. On the map a dotted line designated as "edge of upland"

form the easterly or northerly boundary of eighteen numbered lots obviously a part of this development, and of six undesig-nated irregular shaped pieces, whose identity as a part of the development, insofar as the issues in this case are concerned, is extremely doubtful. The piece in question is at the extreme easterly end of Whitfield Street, close to the creek. The defendant retained title to it, and erected a small building on the street line which he has been operating for sometime as a shell fish market, and built a gasoline tank and services motor boats therefrom. There was apparently no objection made to the building of these structures, but now that he is about to erect a small addition, the two lot owners have brought their suit to enjoin him from building it.

The present building is a detriment to the plaintiffs' lots, and the addition will slightly increase the damage.

The first issue is one of fact and is of controlling import-ance; whether the land in question is actually or by legal implication a part of "Seaview Acres".

Its position on the map is confusing. It is not actually included within the confines of the plot offered for sale; it has no number, letter, or other designation; its easterly boun-dary is highly irregular. And yet a casual view of the map might well lead a prospective buyer to think it was part of the offered land. But it has never been offered for sale; in fact the plaintiffs' testimony is that the defendant told them it was not for sale. Interesting indeed is the testimony of the civil engineer who made the map—that this land is not part of "Seaview Acres" as portrayed on the map. The plaintiffs are thus driven to a claim that it is part of the development by reason of what might be called legal impli-cation, that is, that the defendant orally represented that he was retaining this piece for the benefit of all the lot owners and would establish and maintain upon it a bathing beach, and would retain the unnumbered piece directly to the north as a picnic ground for lot owners and the public. The draw-back to this claim is that the representations, if made, were oral, involved an interest in land, were made after the lots were sold, were gratuitous, stated no period of time, con-cerned land not a part of the development, and were not made to influence or induce sales.

I am satisfied Mr. Newton did not make representations

which brought this land into the development. He certainly did not do it directly and the evidence does not satisfy me that there could be a legal implication to that effect.

There are important differences between this case and **Pierce vs. Roberts, 57 Conn. 31.** In that case there was a seaside development, and the map, recorded in the land records, incorporated by reference into the deeds, showed an elliptical half acre marked "Park". As an inducement to the purchase of lots to the plaintiff the owner represented that the "Park" was not to be sold, but to be kept open for all the lot owners and the purchasers took the lots upon the inducements of these representatives and paid a greater price on account of them. The land in question is not numbered or designated in any manner, it is not even a part of the development, and no representations of any kind, or even reference to it, were made to either plaintiff prior to their purchase of the land. The facts do not bring it within the doctrine of the Pierce case. It is difficult to understand how there could be any dedication of this land so that these two plaintiffs acquire a vested right in it, or how there could be held to be an estoppel in pais. The doctrine upon which these plaintiffs base their claim is sound law, but the facts produced do not come within it. Will equity imply an obligation upon the grantor who creates restrictions to refrain from so dealing with the land remaining his as to derogate from the value of the restriction he has imposed upon his grantee? Now again we at once run afoul of the fact that it is not part of the development shown on the map.

Now there is the ambiguous nature of the restriction itself. It does not prohibit the building of anything other than dwelling houses. It says (a) that no dwelling house shall be placed thereon to cost less than $2000. or within 25 feet of the highway. (b) Any garage or other building erected thereon must be at least 75 feet from the highway. "Or their building" surely does not mean a dwelling house, for that is limited to 25 feet. Does it mean a business building? Apparently it means an outbuilding or shed similar to a garage, in connection with the dwelling house idea, and has no connection with a business building. How then does it apply to the present situation?

Judgment is for the defendant.

The injunction is dissolved.